OPINION *Page 2 
{¶ 1} Appellant-Father Joshua Eubanks appeals the decision of the Guernsey County Court of Common Pleas, Probate Division, which granted Appellee Cody D. Campbell's petition for adoption of Ethan Wyatt Campbell.
 {¶ 2} This appeal is expedited and is being considered pursuant to App.R.11.2(C). The relevant facts leading to this appeal are as follows:
 STATEMENT OF THE FACTS AND CASE {¶ 3} Ethan Wyatt Eubanks was born to Jamie Green, nka Jamie Campbell and Appellant Joshua Eubanks on June 24, 2004. Mrs. Campbell and Appellant were never married.
 {¶ 4} On March 8, 2005, Jamie Green married petitioner, Appellee Cody Campbell. Appellee Campbell is a Corporal in the United States Marine Corps and has, during the course of the marriage, been stationed at Camp Lejeune and Paris Island in South Carolina. Mrs. Campbell and Ethan have resided with Appellee at his various bases since the marriage in March, 2005.
 {¶ 5} On April 12, 2005, Appellant filed a pro se motion requesting to rescind his paternity acknowledgment. Paternity of said child was established by the Guernsey County Common Pleas Court, Juvenile Division, on June 19, 2005. (T. at 16).
 {¶ 6} On July 29, 2005, Appellant filed a motion to establish parenting time and by entry of November 15, 2005, such was established.
 {¶ 7} The issue of parenting time was further addressed by the trial court pursuant to a judgment entry dated February 12, 2006. (T. at 16) Pursuant to the trial court's orders, Appellant was permitted regular, monthly supervised visitations with the *Page 3 
minor child "at least as long as the time stated in the Standard Order" or essentially alternating weekends.
 {¶ 8} Beginning in March, 2006, Appellant began to exercise this parenting time.
 {¶ 9} Appellant traveled to North Carolina twice to visit with Ethan prior to the filing of the petition herein, the last visit occurring on Father's Day 2006. (T. at 66).
 {¶ 10} All parties, including Appellant, agree that no visits have occurred between Appellant and Ethan since Father's Day 2006. (T. at 148). Appellant further acknowledged that he had not spoken to Ethan since June 18, 2006, and that he had not sent any postcards, letters, pictures or packages to Ethan. (T. at 148-149).
 {¶ 11} Appellant states that he sent a birthday card to Ethan in June, 2007. Appellees claim that no such card was ever received by Appellee, Mrs. Campbell, or Ethan. (T. at 38, 67).
 {¶ 12} A petition for the adoption of Ethan Wyatt Eubanks was filed by Appellee, the step-father of Ethan, on July 3, 2007. Said petition alleged that the father, Appellant Joshua Eubanks, had failed without justifiable cause to communicate with the child for one year immediately preceding the filing of the petition. The petition further alleged that Appellant failed without justifiable cause to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding the filing of the adoption petition or the placement of the minor in the home of the petitioner.
 {¶ 13} A hearing on said petition was scheduled for September 25, 2007. Appellant filed no response to the petition and made no appearance until September 21, 2007, when his counsel filed subpoenas with the trial court. *Page 4 
 {¶ 14} On the morning of hearing, Appellant appeared with counsel and advised the trial court that he did not consent to the adoption. Due to the last minute appearance of Appellant and his lack of consent, the trial court converted the hearing and heard testimony solely regarding the matter of consent.
 {¶ 15} By agreement of the parties, petitioner withdrew the portion of the petition pertaining to child support because the child support records revealed that the father had paid child support during the period of one year prior to the filing. (T. at 7-8).
 {¶ 16} Following presentation of testimony and evidence, the trial court took the matter under advisement.
 {¶ 17} By Judgment Entry filed November 7, 2007, the trial court found that Appellee had proven, by clear and convincing evidence, that Appellant had failed, without justifiable cause, to communicate with the minor child for one year preceding the filing of the petition for adoption. Therefore, the trial court found that the consent of Appellant was not required for the adoption matter to proceed.
 {¶ 18} Appellant timely filed a notice of appeal and herein raises the following Assignment of Error:
 ASSIGNMENT OF ERROR {¶ 19} "I. THE TRIAL COURT ERRED IN FINDING THAT APPELLANT HAD FAILED WITHOUT JUSTIFIABLE CAUSE TO COMMUNICATE WITH THE CHILD FOR A PERIOD OF ONE YEAR PRECEDING THE FILING OF THE PETITION FOR STEPPARENT ADOPTION." *Page 5 
 I. {¶ 20} In his sole assignment of error, Appellant argues that the trial court erred in determining that his consent was not required for the step-parent adoption in the instant case to be approved. We agree.
 {¶ 21} More specifically, Appellant argues that the trial court erred in finding that he had failed, without justifiable cause, to communicate with Ethan for a period of one year preceding the filing for of the step-parent adoption in this cause.
 {¶ 22} "The right of a natural parent to the care and custody of her children is one of the most fundamental in law. This fundamental liberty interest of natural parents in the care, custody and management of their children is not easily extinguished. Santosky v. Kramer (1982),455 U.S. 745, 753-754. Adoption terminates those fundamental rights. R.C.3107.15(A)(1). Accordingly, adoptions are generally not permissible absent the written consent of both parents. R.C. 3107.06." In reAdoption of Stephens, Montgomery App. No. 18956, 2001-Ohio-7027.
 {¶ 23} R.C. § 3107.07 governs when consent to adoption is not required. Subsection (A) states consent is not required when:
 {¶ 24} "A parent of a minor, when it is alleged in the adoption petition and the court finds after proper service of notice and hearing, that the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner." *Page 6 
 {¶ 25} "The party petitioning for adoption has the burden of proving, by clear and convincing evidence, that the parent failed to communicate with the child during the requisite one-year period and that there was no justifiable cause for the failure of communication." In re Adoptionof Holcomb (1985), 18 Ohio St.3d 361, paragraph four of the syllabus. "Clear and convincing evidence is that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 26} An appellate court will not disturb a trial court's decision on adoption unless it is against the manifest weight of the evidence.In re Adoption of Masa (1986), 23 Ohio St.3d 163. A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. C.E. Morris Co. v.Foley Construction Co. (1978), 54 Ohio St.2d 279. A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. Myers v. Garson, 66 Ohio St.3d 610,1993-Ohio-9.
 {¶ 27} Because the permanent termination of parental rights has been described as "the family law equivalent of the death penalty in a criminal case," In re Smith (1991), 77 Ohio App.3d 1, 16, trial courts are reluctant to find an automatic relinquishment of parental rights. Trial courts have upheld the mere sending of a birthday card as enough *Page 7 
to defeat R.C. 3107.07(A). In re Adoption of Hupp (1982),9 Ohio App.3d 128; In re Christie (March 12, 1997), Wayne App. No. 96CA0049.
 {¶ 28} Although the term "communicate" is not defined in R.C. Chapter 3107, it has been defined as "`to make known,' `to inform a person of, convey the knowledge or information of * * * to send information or messages[.]'" In re Adoption of Jordan (1991), 72 Ohio App.3d 638, 644.
 {¶ 29} Asked to determine the legislature's intended meaning of the term "communicate" as used in R.C. § 3107.07(A), the Supreme Court inHolcomb held that:
 {¶ 30} "Our reading of the statute indicates that the legislature intended to adopt an objective test for analyzing failure of communication * * *. The legislature purposely avoided the confusion which would necessarily arise from the subjective analysis and application of terms such as failure to communicate meaningfully,substantially, significantly, or regularly. Instead, the legislature opted for certainty. It is not our function to add to this clear legislative language. Rather, we are properly obliged to strictly construe this language to protect the interests of the non-consenting parent who may be subjected to the forfeiture or abandonment of his or her parental rights." Holcomb, 18 Ohio St.3d at 366.
 {¶ 31} Based upon the explicit language of R.C. § 3107.07(A), Ohio appellate courts have held that sending cards and gifts constitutes "communication" for purposes of R.C. § 3107.07(A). See In re Adoption ofPeshek (2001), 143 Ohio App.3d 839; In re Wells, Belmont App. No. 00 BA 49, 2001-Ohio-3411; and In re Adoption of Knisley (Aug. 17, 1983), Fayette App. No. 82-CA-23 (finding that the word "communication" as it appears in R.C. 3107.07[A] may not be encumbered by any requirement that such *Page 8 
communication be effective, meaningful, or satisfactory; and that the legislature could have imposed these types of qualifications in the wording of the statute but chose not to do so).
 {¶ 32} Adoption results in the permanent severance of the parental relation. Thus, the statute should be strictly construed in favor of the rights of natural parents. See 2 Merrick-Rippner, Probate Law (2001), 725, § 98.39; 3 Ohio Family Law Practice (1994) 644, § 46.08; 47 Ohio Jurisprudence3d (1994) 162-163, Family Law, § 909; also see 2 American Jurisprudence2d (1994) 881-882, Adoption, § 13.
 {¶ 33} The "failure to communicate" envisioned by R.C. § 3107.07(A) is tantamount "to a complete abandonment of current interest in the child." 2 Merrick-Rippner, supra, at 728. However, in the case at bar we find no evidence that Appellant has abandoned interest in Ethan. To the contrary, through the short duration of Ethan's life, Appellant has shown considerable interest. The evidence reveals that (1) Appellant paid child support for Ethan; (2) Between January, 2007, and July, 2007, (the only phone records available to Appellant), Appellant made telephone calls to Ethan's mother and/or step-father on at least 24 different days; (3) Appellant made calls to Appellee and/or Mrs. Campbell in July, 2006, August, 2006, and December, 2006, attempting to schedule visitation. Appellant was told by Mrs. Campbell and/or Appellee that they would be traveling to Ohio for the Guernsey County Fair and again for Christmas and that Appellant could visit with Ethan then. Neither trip occurred.
 {¶ 34} We do not believe that this evidence leads to the conclusion that Appellant lost all interest in his child. *Page 9 
 {¶ 35} The evidence adduced during the trial court proceeding reveals the following reasons for the lack of communication between father and son: (1) Appellant lives in Ohio and his son Ethan lives in South Carolina; (2) Ethan was only two-years old during the one-year period at issue in this case, thus restricting the type of communication they could have; (3) Appellant attempted to schedule visitation with Ethan during times he was supposed to be in Ohio, but such trips were canceled by Appellee and/or Mrs. Campbell; (4) Appellant testified that he traveled to South Carolina to visit with his son on July 4, 2006, but was unable to reach the step-father by phone; (6) Appellant testified that traveling to South Carolina was cost prohibitive to him in that it cost him approximately $500.00 to travel to visit his son.
 {¶ 36} All this, particularly the two failed trips to Ohio, constitute sufficient evidence of facially justifiable reasons for a failure to communicate. We are not persuaded that Appellee met his burden by clear and convincing evidence.
 {¶ 37} We further find, in light of the Holcomb mandate and the explicit language of R.C. § 3107.07(A), and the trial court's finding that Appellant sent a birthday card to Ethan in June, 2007, that such constituted a communication for purposes of R.C. § 3107.07(A).
 {¶ 38} A complete absence of communication is required, and reviewing courts are not to assess whether the communication was meaningful, substantial, significant, or regular. Peshek, 143 Ohio App.3d at 844. Because Appellant sent a birthday card during the requisite one-year period, he did communicate with Ethan under R.C. § 3107.07(A), and his consent is required for Ethan's adoption. *Page 10 
 {¶ 39} We therefore find that the trial court erred in finding that Appellant's consent to Ethan's adoption was not required.
 {¶ 40} Appellant's sole assignment of error is sustained.
 {¶ 41} For the foregoing reasons, the judgment of the Court of Common Pleas, Probate Division, Guernsey County, Ohio, is hereby reversed.
 Wise, J., Gwin, P. J., and Farmer, J., concur. *Page 11 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Probate Division, Guernsey County, Ohio, is reversed for further proceedings consistent with this opinion.
 Costs assessed to Appellee. *Page 1